ROSE, District Judge,
dissenting.
I respectfully dissent. The majority concludes that KDMC’s complaint is insufficient because KDMC has not pled plausible violations of § 227(b)(1)(A), § 227(b)(1)(B) or § 227(b)(1)(D). I conclude that KDMC plausibly pled violations of § 227(b)(1)(A) and § 227(b)(1)(D).
Section 227(b)(1)(A)
The majority correctly observes that KDMC sought relief on the theory that the automated calls to area residents violated certain provisions of the TCPA. As the majority sets forth, the TCPA makes it unlawful “to make any call ... using any automatic telephone dialing system or an artificial or prerecorded voice ... to any emergency telephone line ... [or] to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment. ...” KDMC’s complaint alleges that the SEIU made prohibited calls by connecting certain local residents to KDMC CEO Fred Jackson’s (“Jackson’s”) extension at the hospital. Therefore, whether KDMC’s complaint is plausible turns on the meaning of “make any call.”
The TCPA does not define “call.” However, the majority concludes that this term “quite naturally” suggests some kind of direct communication between two parties. Yet, in today’s world, and especially in light of the reasons for enactment of the TCPA, a call is not necessarily between two individuals. One of the parties may be an individual and the other party may be a computer or similar device. In this case, KDMC has pled that the calls received by *746 Jackson came from the SEIU’s automated system.
The majority emphasizes the fact that, if Jackson had answered his phone, he would have heard a real voice on the other end. However, this section of the TCPA says nothing about hearing a real voice.
The majority then turns to the Ninth Circuit to support its determination of what “make any call” means. In Satter-field, the case cited by the majority, the Ninth Circuit determined that sending a “text” satisfied the TCPA prohibition on “making a call.” However, the Satterfield court was addressing the type of message and not whether the message was communication between two parties or between a computer and an individual.
The majority next finds that KDMC’s argument that the SEIU’s robo-calling campaign caused the disruptive deluge of live calls to be made to Jackson “stretches credulity for obvious reasons.” However, I would disagree.
I conclude that the expression “make any call” would include direct telephone communications between an automated dialing system and an individual. Further, I conclude that KDMC has plausibly pled that the SEIU made calls to KDMC using an automated dialing system. Even though a local citizen may have participated in the call to KDMC by pressing “one,” KDMC pleads that the call to it originated with and was connected from SEIU’s automated dialing system.
Section 227(b)(1)(B)
Section 227(b)(1)(B) prohibits making prerecorded calls to residential telephone lines without prior express consent, and section 227(d)(3) requires callers making prerecorded calls to residential telephone lines to identify themselves. The majority observes that the district court did not squarely address either claim, that KDMC does not “appear” to press these claims on appeal and the majority is not “likely” in a position to reverse the district court’s dismissal on “these” grounds.
The majority finds that KDMC has no private cause of action to enforce section 227(d)(3). With this I agree. State attorney generals or other public officials must enforce this section of the TCPA.
As for the section 227(b)(1)(B) claim, the majority determines that, if it were in a position to adjudicate this claim, it is without merit. I do not agree that the record indicates that this claim is without merit.
The majority concludes that, while the SEIU’s robo-calling campaign would otherwise be an obvious violation of section 227(b)(1)(B), the SEIU is exempted. The TCPA gives the FCC authority to exempt calls not made for a commercial purpose and calls made for commercial purposes that (1) will not adversely affect the privacy rights that the TCPA is intended to protect and (2) do not include the transmission of any unsolicited advertisements. 47 U.S.C. § 227(b)(2)(B). Thus, before determining that the SEIU is exempted, a court must first determine if the call was made for a commercial purpose. If the call was not made for a commercial purpose, the FCC exemption could be considered. If the call was made for a commercial purpose, the FCC exemption would not apply. Before concluding that this claim is without merit based upon an exemption for the SEIU, I would remand the matter for a determination of whether the calls were for a commercial purpose and whether the SEIU is entitled to an exemption in this case.
Section 227(b)(1)(D)
Section 227(b)(1)(D) prohibits “us[ing] an automatic telephone dialing system in such a way that two or more telephone *747 lines of a multi-line business are engaged in simultaneously.” Whether KDMC has plausibly pled such a cause of action turns on what it means to “use an automatic dialing system.”
Clearly, KDMC has plausibly pled that two or more of its telephone lines were engaged simultaneously by calls that it received as a result of the calls placed by the SEIU to area residents. While the calls to KDMC were not prerecorded messages, KDMC has plausibly pled that they were all received from one SEIU telephone number and were received as a result of the SEIU’s robo-calling campaign.
Thus, I think that KDMC has plausibly pled that the SEIU has used an automatic telephone dialing system in such a way that two or more of KDMC’s telephone lines were simultaneously engaged. The fact that a “live” person participated in the calls from the SEIU automated system to KDMC is not relevant. Presumably, a live person somewhere, somehow initiates all robo-calls.
Conclusion
I believe that KDMC has plausibly pled that the SEIU has violated sections 227(b)(1)(A) and 227(b)(1)(D) of the TCPA. I also believe that the district court must address whether the SEIU’s robo-calls were for a commercial purpose, and if not, whether the SEIU is entitled to an exemption. Therefore, I would reverse the district court’s dismissal of KDMC’s complaint and remand this matter for continued adjudication of KDMC’s complaint.